The next matter called is case number 121417, People, State of Illinois v. Julio Charez, agenda number six. Counsel, are you ready? You may proceed. Good morning, Your Honors. Counselor, Assistant Attorney General Garson Fisher for the People. Your Honors, at the time of the drafting of the Second Amendment, the laws of the states and the laws of the English common law for hundreds of years before that that provided the foundation for those state laws barred the carriage of weapons in sensitive locations. The United States Supreme Court recognized this in Heller when it said that its decision there did not call into question longstanding prohibitions on carrying weapons in sensitive places like schools and government buildings. This Court has held that the threshold question in a Second Amendment inquiry is whether the prohibited conduct is covered by the Second Amendment at all. And here, based on the fact that at the time of the drafting of the Second Amendment, the prohibited conduct was prohibited by the laws of the states, it is clear that the prohibited conduct, carrying weapons in sensitive locations, is not covered by the Mr. Fisher, it seems like, I don't think we can dispute what you're saying, but the only problem is neither the statute of Northampton nor the quote from Heller seem to address the precise situation here where an urban area's net of zones effectively squashes the right to bear arms when traveling in public. It doesn't look like that specific question is refuted by Northampton and Heller. How do you address that? A couple of responses, Your Honor. First, in a facial challenge, the fact that in many parts of the state, there may be parts of the state where the 1,000-foot radius around the sensitive locations in subsection C-1-5 make it very difficult or even perhaps in some areas impossible to bear arms, the fact that in many parts of the state, most parts of the state, it is undoubtedly not the case that it is a constructive ban on the right to bear arms means as a facial challenge, which is what we have before us today, that claim would fail. It's also worth noting that defendant has waived the argument that this is a constructive ban on the right to carry arms. They said that that is not the reason why subsection C-1-5 violates the Second Amendment, but rather that the regulation on the right to bear arms of prohibiting carriage in sensitive locations is itself unconstitutional under the Second Amendment. To your first point, isn't even the most vigilant person, wouldn't they unwittingly enter an area? I don't think so, Your Honor. The 1,000 feet and perhaps the number 1,000 makes it sound bigger than it is. For example, in the city of Chicago, you're talking about a little bit over a block radius, and it makes sense that you extend the radius around the sensitive locations beyond their geographical boundaries. The conditions that make a sensitive location a sensitive location don't stop as soon as you cross the geographical boundary. There aren't simply more children in parks, but there are more children on the block leading up to a park, making their way to the park. Indeed, the federal Gun-Free School Zone Act has an identical 1,000 foot radius around schools that's encompassed by its prohibition on the carriage of weapons. Do we make anything of the helicopter dealing with schools and not parks, or do you just say the same analysis would apply to both? Well, I think that the same analysis applies to both. If we do move on to beyond simply the question that sensitive location, because of course the sensitive locations discussed in the statute of Northampton were fairs and markets, and the sensitive locations that have been identified by Congress and the General Assembly here are different sensitive locations. There's more data about the presence of guns and the risks of gun violence in schools than there are in parks, but certainly the reasoning that creates the substantial nexus under the intermediate scrutiny test between the important government interest in protecting children and removing guns from locations where children congregate would apply equally to parks as well as schools. And if this court finds that there is a difference, are you asking us to sever? Absolutely, Your Honor. I think there's the only provision and application of subsection C-15 that is before this court and was before the lower court is carrying a weapon within 1,000 feet of a school, because that's the crime to which defendant pled guilty. And absolutely the court, should it disagree with the state and find that the provision with regards to parks is unconstitutional, should sever that provision. The subsection C-15 functions equally well in its other applications without the language about parks, and I think there's no question the General Assembly would have passed a prohibition on carrying guns in and around schools, in and around courthouses, and so forth in the absence of the prohibition on carrying guns in and around parks. In fact, several provisions of subsection C-15 were passed via separate public acts. So there's no reason that the court, should it disagree with the state, can't sever the prohibition on carriage in and around parks. Mr. Fisher, I think there might be a standing issue here. The defendant was under 21 when he was charged. Not only this court, but the Supreme Court has consistently found that possession of handguns by minors falls outside the Second Amendment core protection. Is that right? That is right, Your Honor, and I think perhaps that is most relevant in the discussion which the state engaged in about why this case demonstrates why this court's recent decision in Shrine Park was wrong. We decided the state drops charges that this court has, and the Supreme Court have already held are unquestionably constitutional charges, and should this, should defendant prevail here, the state would lose all benefit of the bargain that it entered into, while defendant would receive a windfall of escaping any criminal liability. But in this case But you're conceding that he might not have standing. Well, I think, Your Honor, in this case, defendant only pled guilty to carriage of a weapon within a thousand feet of a park, and even something as objective as the defendant's age is a fact that would need to be proven to the jury in order to establish that distinct aggravated crime of unlawful use of a weapon. So in the absence of him having been convicted of carrying a weapon while under the age of 21, I don't know that it would be appropriate to hold that fact against him here now. So I think the court can resolve the question of whether this crime that he was convicted of, that he pled guilty to, is constitutional. Mr. Fisher, help me with the rationale involved here. I'm having difficulty that someone with the intent of doing violence from a distance directed at children in a school would be the least bit deterred by a law prohibiting the carrying of firearms within a thousand feet. Can you help me with that? Absolutely, Your Honor. There are a couple of ways in which this applies. You are correct, Your Honor, that the prohibition on carrying a weapon might not deter someone who sets out with the intent of breaking the law from doing so. First, having it be illegal to carry a weapon in sensitive locations makes it easier to police against someone who arrives with a weapon with the intent to commit a crime because police can arrest the person, detain the person, as soon as they identify that they have a weapon without waiting for probable cause to believe any further criminal activity is underway. And yes, we are talking about carried in a concealed manner, but experienced police officers often can identify that someone is carrying a concealed weapon. This court just recently decided Holmes, which had a fact pattern in which that very event occurred. So it helps with policing. It also helps to protect bystanders and law enforcement from the increased risk that is created when someone carries a weapon into a situation with no intent initially to engage in criminal activity. Someone who goes to a park with no intent to engage in criminal activity might choose to leave their gun home because it is prohibited from being carried in and around the park. And then should a situation arise, a conflict escalate, an argument escalate, there is no risk of that situation escalating into gun violence, at which point the sensitive population, the high number of children that would be present in a park wouldn't be placed at the increased risk that guns create under such circumstances. The General Assembly has recognized in myriad ways that the mere presence of guns in a situation increases the risk to bystanders and law enforcement. That's why crimes like armed violence and the 15-year firearm enhancement apply even when someone never takes out the gun that they carry into a situation. So there remains a substantial nexus between this interest in protecting children and prohibiting the presence of guns in places where there are going to be large concentrations of children. And under, for either of these reasons, either because at the threshold inquiry the court can say prohibitions on carrying weapons in sensitive locations aren't covered by the and apply intermediate scrutiny because there is a substantial nexus between the government's interest in protecting children and the regulation at issue here, the court should conclude that this statute does not violate the Second Amendment. Justice Thomas asked about someone inadvertently coming into the 1,000 foot zone. The statute subparagraph A says when a person knowingly carries, and then C1.5 goes on and says a person who violates on any public way within. Is it your position that that knowingly applies to the coming within the 1,000 foot area of the park? I don't think so, Your Honor. I think the knowingly refers to carrying the weapon, but just I don't think that the 1,000 foot radius changes the analysis that just as one can exercise one's right to bear arms by not entering into a sensitive location that ends at its immediate geographic perimeter, one can just as easily exercise, perhaps with a modicum of additional effort, exercise the right to bear arms by steering clear of the 1,000 foot radius around that sensitive location. As mentioned, the federal prohibition on carrying guns in schools extends 1,000 feet beyond the perimeter of the school. That was the law when the court said that it wasn't calling into question the long-standing prohibition on carrying guns in places like schools. The court was aware of the details of that law. They had decided a case on the Gun-Free School Zone Act just a term or so prior. So both because of logic and the historical record, I think it is clear that this regulation lies outside of the parameters of the Second Amendment. If the court does turn to the second inquiry, intermediate scrutiny, I do think it is necessary to take a moment to discuss why intermediate scrutiny applies here. This court has recognized there are two distinct rights that are encompassed by the Second Amendment, the right to keep arms, the right to own arms for defense of hearth and home, and the right to bear arms, which is the right to carry in public. As the U.S. Supreme Court has recognized, it is the right to keep arms for defense of hearth and home that is the very core of the Second Amendment. The right to bear arms in public at the time of the drafting of the Second Amendment for hundreds of years before that was regulated more than the right to keep arms. And that is why federal courts have consistently applied intermediate scrutiny to regulations on the right to bear arms. It recognizes there is a constitutional right to bear arms. It is not rational basis, but it is also not strict scrutiny because we are not talking about the very core of that Second Amendment right. And defendants' reliance on, as Zell has argued, for a stricter standard of scrutiny is inapposite because the regulation or the ban, complete ban, on gun ranges in the city of Chicago operated both practically and legally to infringe on the right to keep arms for defense of hearth and home. It made it difficult, if not impossible, to put in the training necessary to acquire a license to own a weapon. And as a practical matter, it made it difficult, if not impossible, to protect one's defense of hearth and home. And a person who lives within 1,000 feet of the park possess a firearm in his or her home? Absolutely, Your Honor. Do they walk outside with it? They might have to, but they would have to exit their house with the firearm cased and unloaded until they remove themselves from the 1,000-foot radius, and at which point they could carry the weapon in concealed manner, assuming, of course, they had a concealed carry permit from that point forward. And, Your Honors, the defendant argues that this Court should not engage in its traditional Second Amendment analysis at all because the case is controlled by people v. Burns. People v. Burns is distinguishable, and defendants' argument is prior to a finding of guilty. And as the U.S. Supreme Court said in Olayne, that makes it an element of a distinct aggravated offense. In contrast, the sentencing enhancement in Burns was a prior conviction. Prior convictions are an exception to the entire Apprendi-Olayne line of cases. It's something that didn't need to be introduced until after the Second Amendment analysis. And as discussed, under that analysis, this statute survived scrutiny. If Your Honors don't have additional questions about the merits at this moment, I'd like to turn to a couple of tangential questions. We mentioned briefly the issue of severability. Again, the only provision and application of the statute that is in the marriage under A-4 within 1,000 feet of a school, that provision is severable. So should the Court disagree with the State, it should only hold that that provision and application is unconstitutional and sever it from the remainder of the statute. And finally, I know the Court's decision in Shynal to the contrary is quite recent, but I think this case demonstrates why, unfortunately, Shynal was poorly reasoned and Justice Tice's dissent there has the right of the issue. Before that, this Court had always consistently applied contract principles to negotiated plea agreements. And under those principles, the proper remedy, should defendant prevail here, would be to return the parties to the position they were in prior to the entire benefit of the bargain. The defendant gets a windfall of facing no criminal liability for conduct, some of which this Court has already expressly held is constitutionally regulated under the Second Amendment. So for those reasons, while sorry to Tice's would ordinarily argue against it, this Court should revisit the decision in Shynal and take this opportunity, both as a jurisprudential matter to avoid departing from its longstanding tradition of applying contract law and as a practical matter to avoid disrupting the plea bargaining process to decide that the State does have the right to reintroduce the charges it dropped in exchange for a defendant's guilty plea. The Court has no further questions at this time. Thank you, Your Honors. Seeing none, thank you. Ms. Johnson. Good morning, Your Honors. Counsel, may it please the Court. My name is Erin Johnson. I'm with the Office of the State Appellate Defender and I'm here representing the affilee, Mr. Julio Cherez. Now, in this case, the Circuit Court was correct in vacating Mr. Cherez's of the Illinois Unlawful Use of Weapons Statute in 2013. And that's because Section A-4 of the Unlawful Use of Weapons Statute has already been declared facially unconstitutional. And I want to stress that this is a facial challenge at the outset. Justice Burke asked counsel for the State if there's a standing issue because the defendant is under 21. And I would say unquestionably, no, there is no standing issue because Mr. Cherez was convicted based on his just being in public with a gun under this general provision in A-4 that says no one can have a gun in their vehicle or on their person while they're outside. And then C-1.5 comes in and says, and if you're within 1,000 feet of a park, that's an additional penalty. You'll be a Class 3 felony. So because he was not convicted based on his status as being under 21, we're challenging the statute not as it applies to Mr. Cherez, but by its plain language. So I think that that, when we're looking at the facial challenge here, A-4 in Moore v. Madigan, the Seventh Circuit found that A-4 and A-10 of the Unlawful Use of Weapons Statute, as well as the identical provisions of the aggravated Unlawful Use of Weapons Statute, were facially unconstitutional. And then in Aguilar, this Court adopted the analysis of Moore in finding that the aggravated Unlawful Use of Weapons Statute was facially unconstitutional. So it's clear that A-4 is facially unconstitutional as a prohibition on the carriage of weapons in public. And because a violation of A-4 is the foundation on which this C-1.5 enhancement is built, it cannot stand in this case where A-4 is facially ab initio. And I do think, contrary to counsel for the State's position, that Burns does apply here. In Burns, this Court found that a sentencing provision which applied to felons of the aggravated Unlawful Use of Weapons Statute did not save that unconstitutional provision of Unlawful Use of Weapons Statute. And the reason is that this Court said an unconstitutional statute cannot become constitutional simply because it's applied by a sentencing provision to a category of persons who the legislature could have regulated in a separate statute had they chosen to. And that's the same issue we have here. In this case, the sentencing provision increasing the penalty for a thousand feet of a park does not So I think the results here should be the same in Burns. Counsel for the State attempts to distinguish Burns by... It connects to the element though, doesn't it? It does. But what I was going to address is that although counsel talks about apprendee and this being an additional element that would have to be proven before a jury, there's nothing in Burns or Mosley or any of the case law that suggests that that additional element that would be an And I think when you look at your decision in Mosley, as well as the severability statute, it's clear that when an unconstitutional portion of statutes declared unconstitutional, what remains can only be enforced if it's complete within itself and capable of independent enforcement. And we look at C1.5 here. When you remove A4, C1.5 says a person who violates A4 and some other sections not relevant here, in a thousand feet of a park or some other locations that are not at issue here. If we remove A4, we just cross out A4, all it says is a person within a thousand feet of a Unquestionably, that's not an enforceable offense. A4 is the operative offense. And when we remove A4, we don't have... When we sever it, under the principle of severability, what's left is not complete and capable of independent enforcement. I think it's telling that in Mosley, which the State cites, this Court found certain provisions of the aggravated unlawful use of weapons statute were constitutional because they were able to stand on their own, but then looked at a sentencing provision that applied to persons over the age of 18 who this was their first offense, which are the type of things that need to be proven under Apprendi, and that section said if they have a violation listed in factors A and C of this section, and this Court said, well, it incorporates the unconstitutional provisions, we can't enforce it. And here, it's clear that C1.5 incorporates the unconstitutional provisions, being A4, which cannot be enforced. So because C1.5 is triggered by this unconstitutional provision, I don't believe it can be enforced. But then getting to the second portion of our argument, I think the State's reliance on this historical analysis is, first of all, misplaced. If we look at Moore v. Madigan, which came after Heller, in looking at the Second Amendment right, Heller talked about this right for self-defense, and then more clearly states, you have a right to carry firearms in public for self-defense. That's at the core of your Second Amendment right. And indeed, Moore talks about the fact that the need for self-defense is greater in public than in the home. So, and I think when we look at Moore into Aguilar, it's clear that the right to carry a weapon in public is a core Second Amendment right. It's the same logic why the aggravated unlawful use of weapons statutes with similar language to this statute, which banned anyone from being in public with a loaded operational firearm, would be unconstitutional. And so I think that this is actually subject to a strict scrutiny analysis, because it is at the core of the Second Amendment right. Now the State tries to distinguish this by saying, well, carriage in sensitive locations is not a core Second Amendment right. But here, and this goes to, I believe, Justice Thomas' question, this is not a restriction in a sensitive location. This is not a restriction that you can't go into a park or into a school or into a court building. This is a restriction that says you can't go within 1,000 feet in any direction of a park or these other locations. Now park is the only. So your position would be the provision that includes 1,000 feet of the school is equally unconstitutional. I don't think that we need to address that at this point. But wouldn't that be the logical argument, the extension of your argument? I think that that could be the logical extension of the argument. And I would point out two issues. I think that whenever we're going to have a regulation, or that's not what I think, I'm sorry, the law states that whenever we're going to have a regulation on a core Second Amendment right, it has to be narrowly tailored to serve a compelling government interest. And when we look at these 1,000 foot zones, they're not narrowly tailored to serve a compelling government interest. Now the State points out this 1,000 foot zone in the federal statute. You know, Heller doesn't actually talk about these 1,000 foot zones being presumptively constitutional. Heller just talks about in schools. And moreover, the 18 U.S.C. Federal Provision of the State citing actually states that a person needs to be carrying a weapon within 1,000 feet of a place that they know or have reason to believe is a school zone. Or they have language about knowing or has reason to believe there's a school zone. So there's a knowledge element there. In this statute, there is nothing that would allow someone to be unnoticed, that they're entering into this 1,000 foot zone. And certainly, whether or not schools, I think that I agree with the State in the sense that if this Court determines that parks are unconstitutional, it doesn't necessarily follow. I don't think it's all or nothing. It doesn't have to be that schools and parks both have to be unconstitutional. We're just dealing with parks. But I would say that the State still has to meet the same burden of narrow tailoring. And the issue with this statute, it restricts people from having guns in their vehicle or on their person. And there's no exception for a car that's in motion on a public way. So you have the situation of someone who's driving within blocks of a park or a school, running afoul of this law, just having a gun in their vehicle for self-defense. And moreover, you have people being in jeopardy of having their right pop in and out of existence as they travel throughout Illinois. You know, Heller and McDonnell talk about the core being the protection of the home. And I think you said, correct me if I'm wrong, that it's important to carry it in public, it's fundamental to carry it in public as it is in the home. Did you say that? Yes, I did. And on what basis do you say that? That's what Moore said. That's what Moore versus Madigan, I mean, the Seventh Circuit said, you have a greater need for self-defense when you're out on the streets in Chicago versus in your apartment. And the language Judge Posner used, if you're on the 30th floor of your elevator building, you're much more likely to need a gun for self-defense. The Tenth Circuit has disagreed with that, correct? Or the Ninth Circuit has disagreed with that, correct? I believe you're correct. The Supreme Court has not taken a certain either one. No, that's correct. But I would say that if you look at Heller, Heller does use the language of self-defense, and Heller does talk about the right to bear arms being the right to carry a firearm for self-defense. And I think the logic behind Aguilar, this course is in Aguilar, still dictates that, you know, Aguilar, identical to this law, prohibited anyone from having a loaded, uncased firearm in public. And that was clearly facially unconstitutional based on this court's decision. So I think that A4 here, which still says you can't have a firearm loaded, uncased, in public, is similarly facially unconstitutional. So I think that it's established by the case law, although I know the Supreme Court of the United States hasn't come out and said, you unquestionably have this right to have a gun on a public street. The language in Heller that talks about self-defense does indicate that that is part of your second-amendment right. And I think Moore v. Madigan makes that clear, as does this court's decision in Aguilar. So the right to carry a firearm in public is part of the right. And the state actually acknowledges in its brief that the right to bear arms is the right to carry a firearm for self-defense. So I think, you know, you can't logically say that someone wouldn't have a need to defend themselves in their front yard or on the street in front of their home or people who are driving. I mean, this regulation prohibits people from having a gun that's operational in their vehicle. So someone who's driving late at night and keeps a firearm in their vehicle for protection would not be able to drive throughout Illinois without having the jeopardy of their right being in and out of existence. There was only a passing reference, I think. But did you understand, Mr. Fisher, to say that there was some type of waiver argument with respect to whether or not you've ever made a position that it was unavoidable? Right. So I think, and that gets down to the state says that we waive the argument that the zones are unconstitutional because they're unavoidable. And I guess what I had said in my brief is Judge Barsani in the circuit court said because there's all these zones in C1.5, there's parks, there's schools, there's public transportation, there's public housing, Judge Barsani had made a statement in passing that it was possible that someone would have a situation where the zones got so big they weren't able to go outside at all. And the state in their opening brief said, well, that's an over-breath argument. That's not a facial challenge. And what I replied and what I would still reply is that this is a facial challenge because I'm not asserting that it's just unconstitutional because a hypothetical person would live too near all of these zones. I'm saying that every person in Illinois under this law is prohibited from traveling with a gun in their car or on their person without going into these zones unwittingly and have their rights pop in and out of existence. So it's not, I mean, to make it clear, it's not an as-applied challenge. So I don't think we've waived the idea that the zones are unconstitutional. All I was clarifying is that the idea that there's, to the extent that Judge Barsani's words could be taken as an over-breath type of argument, that's not the reason that ultimately Judge Barsani found this facially unconstitutional and not the reason that this court should affirm his decision finding this law facially unconstitutional. Because any citizen in Illinois, and I think that gets to the state's point that because there are some areas of the state where there's, someone could be in a thousand, not in a thousand feet of park, and I think, you know, the state says this in their brief, they don't cite any authority for how big a thousand foot zone is in any location in Illinois. So we just have to take their word for it. But even if we can imagine that there are parts of the state that are more rural where someone could stand stationary in a field and not run afoul of this law, that doesn't make this not a facial challenge. That's a misapplication of the Salerno principle that, you know, facially unconstitutional must be unconstitutional of all its applications. Because this Second Amendment right to bear arms, to carry a firearm on your person, is a personal right that goes with you everywhere, just like, you know, your right to free speech or your right to avoid unreasonable searches. So it's a personal right. It travels with you wherever. We're not saying that this is unconstitutional because Mr. Shiraz lives in a particular location. We're saying it's unconstitutional everywhere because no one in Illinois would be able to travel throughout the state without entering these zones, which are not narrowly tailored to serve a compelling government interest. And if you look at EZEL, I mean, EZEL is not exactly on point with this case because it's dealing with the range ban. But the court in EZEL said, where the district judge said, well, someone can go outside of Chicago and go to a range that's in the suburbs, and that's fine. The Seventh Circuit said, no, that's a misapplication of what Salerno says. You can't say that to the extent someone can exercise their right in a different jurisdiction, their right is then that law doesn't infringe on their rights. And I think that makes sense. To say that because someone standing in the middle of a field somewhere in a rural part of the state could have a gun on them, that it doesn't matter that people in other parts of the state are having their ability to carry a weapon in their vehicle on their person and infringe makes the law all right is, I guess, a real perversion of what facially unconstitutional means. This applies to everyone by its language, and it prevents everyone from driving in a car within a thousand feet of these parks without having their right pop in and out of existence. And I think that also gets to, I would also bring up EZEL, because even if we think that this is not strict scrutiny, even if for some reason it's not narrowly tailored to serve a compelling government interest, I would still urge this court that when EZEL thought about these bans on gun ranges in the city of Chicago, the Seventh Circuit said the right to carry a firearm for self-defense, a corollary of that right is being able to train yourself to properly use that firearm. And because this is a corollary of the Second Amendment right, we have to use intermediate scrutiny. And in EZEL, the Seventh Circuit said we need to see that this statute is a close fit with substantial government interest and that the interest justifies a substantial encumbrance on that right. And here, even if we apply a lesser degree of scrutiny, as they did in EZEL, this law is not related to a substantial government interest, and it's not a close fit with that interest. And I think the state keeps talking about children, and I think that's misplaced, because again, here we're talking about a regulation on parks, which encompasses wide areas of different uses, including forest preserves, running trails, all different things, not necessarily where children might or might not be present. And I think that under either iteration, strict scrutiny or intermediate scrutiny, there's no narrow tailoring or close fit between an interest in protecting children, which the state has put forth, and preventing a law-abiding citizen from having a gun in their glove box that they keep for self-defense and driving within a block of a park, maybe not even in view of that park. There's no close fit here. And because I would reiterate that the right to carry a firearm for self-defense is at the core of the Second Amendment, this law is unquestionably unconstitutional on that basis. However, again, I would reiterate, as I've stated before, that if we look at this Court's decisions in Burns and Mosley, I don't believe that we even need to get to the issue of whether or not restricting a gun within 1,000 feet of a park violates the Second Amendment, because the statute in this case is already facially unconstitutional and infirm because A-4 is facially unconstitutional as a prohibition on anyone having a gun in public, and C-1.5 cannot save A-4 under Burns and Mosley and the rules of severability. And then, I guess, just a parting, I guess, last point. We believe that this Court's recent decision in Chennaul was correct and that there's no reason that this Court should revisit Chennaul. The State, obviously, is tasked with charging and making decisions about what type of plea bargains they want to accept. I believe that Chennaul was correctly decided and that this Court should deny the State's secondary request to reinstate any of the dismissed charges that are past the statute limitations. Do you have any other questions? Seeing none, thank you. Thank you very much. Mr. Bligh? Your Honors, I'd like to begin by turning a little more attention to the argument that we posited as waived, that the 1,000-foot zones function as a comprehensive or near-comprehensive ban on the right to bear arms. Judge Versanti made more than just a passing reference to this theory. He, in fact, held that the effect of the 1,000-foot language on gun rights is a near-comprehensive ban in saying that the practical effect was that a person could not leave their home at all with a licensed weapon. And in terms of whether that argument's been waived, in their Appley's brief, defendant said explicitly, this is not why the statute is unconstitutional. That constitutes a waiver of the argument that the 1,000-foot zones operate as a comprehensive ban on the right to bear arms. But leaving aside the issue of waiver, our response that the people made in our opening brief is that that argument fails on a facial challenge because there are unquestionably places in Illinois and people in Illinois to whom these regulations can be applied without it being a comprehensive ban on their right to bear arms in public. The court, of course, can take judicial notice of basic geographic facts. There's no question, and it's not standing stationary in a cornfield, that in much of this state, one can walk around or drive around with a weapon, with just a modicum of research into their surroundings, without passing within 1,000 feet of these places. Every person in the state would be precluded from going into certain areas. And that's true, Your Honor, but that is exactly the kind of regulation that we can tell from looking at the laws of the states at the time of the Second Amendment and the laws of the state at the time of incorporation via the Fourteenth Amendment. We're looking at the British common law that provides the foundation for those state laws. We can tell that that kind of regulation, prohibiting everyone from entering into certain areas, is exactly the kind of conduct that's not protected by the Second Amendment. The statute of Northampton prohibited the carrying of weapons in fairs and markets. Statutes at the time of the drafting of the Second Amendment prohibited carrying weapons in certain locations. And the Supreme Court has recognized that there is a longstanding history of banning carrying weapons in certain locations. So, yes, it is true. This is a ban on everyone in the state of Illinois carrying weapons in certain locations. That's not protected by the Second Amendment. It is not a comprehensive... Well, I think there are two ways to look at it, Your Honor. One is this is not a comprehensive ban on carrying a weapon, on bearing a weapon in public for everyone in the state of Illinois at all. I posit that it's probably not a ban on carrying a weapon in public for anyone in the state of Illinois. But as a facial matter, there's no question this can be constitutionally applied to much of the state of Illinois in terms of whether it's a comprehensive ban on carrying a weapon in public and in terms of whether someone can avoid going into the sensitive locations. Courts have discussed in discussing why these bans are constitutional the fact that one can exercise one's right to bear arms simply by avoiding the sensitive areas where one is prohibited from carrying weapons. And the same is true in Illinois. So as a matter of whether this is a comprehensive ban, as a facial matter, it clearly fails. And in terms of this being a regulation on everyone's right to carry weapons in certain locations, that's exactly what it is, but that's the kind of conduct that's not protected by the Second Amendment. And turning to the question of whether the right to bear arms is the core right of the Second Amendment, we're not asking the court to overturn Aguilar. We're not saying that the right to bear arms is not a right protected by the Second Amendment. It's there in the plain language of the Second Amendment. And, you know, this court followed Moore's judgment that the right to bear arms is protected by the Second Amendment and a comprehensive ban on that right violates the Second Amendment. To the extent there is dicta in Moore that suggests that the right to bear arms is co-equal to the right to keep arms for defense of hearth and home, that's incorrect. The Supreme Court has said the right to defend one's hearth and home is the core right of the Second Amendment. To keep arms for the defense of one's hearth and home is the core right of the Second Amendment. And not only has the Ninth Circuit recognized that the right to bear arms, while a right under the Second Amendment, is not the core right, so have the Second, Third, Fourth, and Seventh Circuit itself applied intermediate scrutiny to regulations on the right to bear arms. It's not simply the case that because something is covered at all by the Second Amendment, it's at the core of the Second Amendment. And regulations on the right to bear arms in public lie outside of the core right of the Second Amendment, which is why an argument that perhaps some parts of parks don't have the attributes that make them sensitive locations and therefore perhaps the General Assembly could have tailored the statute somewhat differently to only apply to those portions of parks that do fit certain characteristics is unavailing. The state doesn't need to show narrow tailoring here. They need to show a substantial relationship between the regulation the General Assembly did pick and the important interest that it was advancing. And there's no question that that important nexus exists in this case. And then finally, to turn quickly back to the question of burns and whether it's controlling here, I think there's no question after Apprendi and Elaine that the state legislature can't place an element of a crime outside of the elements of the crime and make it a sentencing factor simply by nature of the structure they have chosen. to enact the statute. The crime the defendant was convicted of was not carrying a weapon in public. It was carrying a weapon in public within 1,000 feet of a park. That's what was charged. That's what he pled guilty to. That's what would have needed to have been proven to the finder of fact beyond a reasonable doubt. It is a distinct aggravated crime from simply carrying a weapon in public. And even if A4, as a facial matter, can't function by itself constitutionally, can't be enforced on its own constitutionally, A4C15, so to speak, can. It's similar to the way in which the AUUW statute is constructed where either A1 or A2 needs to be proven in conjunction with some subsection of A3, and this court found that A1 and A2A3A were unconstitutional, but that didn't mean that it couldn't look equally at provisions like A1A3C and A1A3I and say those are constitutional under the Second Amendment. The A4 by itself may not be enforceable, but A4C15 absolutely is. Unless your honors have any further questions. Mr. Fisher? Yes, John. Just to follow up on an earlier question that Chief Justice Carmeier had for you, I understood your comments. You said the homeowner, I think his question was about the homeowner, lives within 1,000 feet, no problem. You said when they go outside the home, when they hit the public street or the public sidewalk, for example, it has to be cased, it has to be non-operational. Until they exit the 1,000-foot zone. My question is, to take that a step further, they're parked as close as they can to their home, they're going from their home to the car, it's within 1,000 feet, so their right to bear arms has to be non-operational once they're off their property line. It has to be regulated until they exit the 1,000-foot bubble. What about within the 1,000 feet? Within the 1,000 feet. Going to their car. Well, carrying within 1,000 feet is not a right that's protected by the Second Amendment because it's carriage in a sensitive location. Admittedly, as an as-applied challenge, I think that would be a closer case. But I still think the regulation of the right to carry in the sensitive location is not protected by the Second Amendment as demonstrated by the historical record. People ask that this Court reverse the decision of the Circuit Court below. Thank you, Your Honors. Thank you. Case number 121417, People v. Chárez, will be taken under advice for this agenda, number six. Mr. Fisher and Ms. Johnson, we thank you for your arguments today. You are excused.